# Murray, Appellant, *v.* Wilkes-Barre Township School District.

*School law—Teachers—Employment—Terms—Act of June* 25, 1885, *P. L.* 175.

Where school directors have elected a teacher, holding a state normal school diploma, for one term, they cannot during the current school year extend his contract for two additional terms. In making the original contract they have exhausted their powers under the Act of June 25, 1885, P. L. 175, and in attempting to extend it, they are trenching on the powers of the succeeding board.

Argued Feb. 27, 1907. Appeal, No. 18, Jan. T., 1907, by plaintiff, from judgment of C. P. Luzerne Co., Oct. T., 1904, No. 555, for defendant non obstante veredicto in case of Martin C. Murray v. School District of Wilkes-Barre Township. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

374    MURRAY, Appellant, *v.* SCHOOL DISTRICT.

Statement of Facts—Opinion of Court below. [33 Pa. Superior Ct.

Assumpsit for salary as teacher.

FERRIS, J., filed the following opinion:

The board of directors of the school district of the township of Wilkes-Barre, having duly organized for the school year beginning on the first Monday of June, 1901, met at an adjourned meeting on July 8, and elected the teachers and janitors for that school year, fixing the term as one of ten months, beginning September 2, 1901. One of the teachers so chosen was the plaintiff, who was employed for one year. The teachers and janitors so elected entered upon the performance of their duties and continued to perform them until the end of the term. At the February election of 1902, two of the directors, Brogan and McAndrew, were defeated for re-election and Smith and Burke were chosen in their stead. The term of office of the latter began on the first Monday of June, 1902. On May 27, 1902, five days before the beginning of the new school year, the old board of directors, by a majority to which the votes of the retiring members Brogan and McAndrew were necessary, assumed to fix the term of the new year as one of nine months to begin on September 1, 1902, and to elect a full corps of teachers and janitors, for periods varying from one to two terms. The plaintiff was so elected for a period of two terms, to begin in September, 1902.

Upon organization of the new board they declined to be bound by this action of their predecessors in office, and themselves elected teachers and janitors, including Owen Johnson as teacher of the school for which the plaintiff had been elected by the outgoing board. Mr. Johnson taught the school for the term beginning in September, 1902. Mr. Murray, the plaintiff, went to the school for the purpose of teaching, but, finding Johnson in possession, retired from the field. It seems from the evidence that the plaintiff held himself in readiness to teach this school during the term of 1902–3, but for the term of 1903–4, accepted other employment. He brings this suit to recover for the first of the two terms for which he was employed by the outgoing board in May, 1902.

The material facts being undisputed, the case turns upon the question whether the board of directors had the right at the end of the school year and under the circumstances of this

case, to employ the plaintiff for a period to commence after the end of the school year in which the contract was made.

Under the Act of June 25, 1885, P. L. 175, the school board would have the right to hire the plaintiff (he having a normal school diploma) for two or for three successive terms instead of one if they had chosen to do so when they elected him in July, 1901 : Burke v. School District, 28 Pa. Superior Ct. 16. But they did not choose to do so. It is argued by the plaintiff's counsel that the board, having the right at the beginning of the school year to elect the plaintiff for three successive terms, retained that right throughout the year, that their power was not exhausted by its first exercise in July, 1901 ; but that they might, tentatively, elect for one year if they chose, and then, if the teacher proved his worth, at a later date extend the period of his employment for two additional terms. But they did not choose to do this. The first election of the plaintiff in July, 1901, was not tentative. There is nothing to show that the board had in contemplation an extension of his term of employment if he did good work; and his second election in May, 1902, did not purport to be such an extension. It was a new election for a new period to begin in a subsequent school year and had no reference to his former employment. So far as the evidence shows, it was in no way distinguishable as a legal or illegal exercise of authority from an election of a perfect stranger. Unless warranted by the act of 1885, it was quite as open to objection as an invasion and usurpation of the power of the incoming board as was the act of the directors for the school year of 1901–2 in assuming to fix the beginning and duration of the school term of 1902–3.

Running through the entire body of statutory law relating to the common school system we find the school year adopted as a unit of duration. Three of those units make up the term of office of the school director. The people are to pass upon the personnel of the board and may by electing two new members change it for each school year. The board is to be organized anew at the beginning of each school year, as a distinct and separate administrative body from that of any preceding or succeeding year. Funds are to be provided by taxation annually. The state appropriation is distributable annually. Reports are to be made annually—at the end of the school year,

giving a history of past operations—and at its beginning (before the opening of the schools and immediately after "the annual appointment of teachers"), giving the names of the teachers so chosen and designating the schools to which they have been respectively assigned, with a statement of the date of the beginning and the duration of the ensuing term. A minimum annual school "term" is fixed by law. An annual meeting of directors with the tax collector is provided for. The act of 1854 (sec. 25) provided that "immediately after the annual election of teachers" in each school year " and before the opening of the schools for the ensuing term," a joint meeting of directors and teachers should be held relative to the adoption of school books. So also, many other provisions of the law might be cited, all tending to show that in the legislative mind the school year was regarded as a fixed administrative period within which, as a general rule, the board of directors for that year should, and beyond which they should not, exercise a control over school affairs. While it is true that in certain cases a school board is authorized to enter into contracts not to be fully performed during the school year in which the contract was made, yet these cases are exceptional, and we have been unable to discover in any of them any grant of power to a school board to bind the district and tie the hands of their successors in office by a contract relating to the running of the schools, the performance of which could not by its very nature be entered upon until after another school year had begun and another school board had organized and assumed the duties and responsibilities of their office.

It is difficult to avoid the conclusion (1) that the statutes establishing and regulating our common school system disclose a general legislative intent to limit the power of a school board to control the operations of the schools, to such matters as relate either wholly or partially to the administration of school affairs during the particular school year, and within the particular district in and for which the particular board was organized ; and (2) that an act of assembly should be construed in accordance with this general intent unless by its express terms, or by necessary inference from the language employed, a different specific intent appears.

Before the passage of the Act of June 25, 1885, P. L. 175,

while there is no express mandate to that effect, it was assumed in the acts of 1854 and 1862, and the general practice was that all teachers were to be elected (or re-elected) annually, by each successive school board after its organization, and before the opening of the schools for the next ensuing term.   The act of 1885 made an exception to that general rule as follows : " Local school boards of the various townships may elect principals and assistant teachers holding the grade of ' professional certificates,' for two successive school terms, and those holding the grade of ' permanent certificates,' or diplomas, issued by state normal schools of this commonwealth for three successive terms."   Nothing is said, and, therefore, the law left unchanged, as to when the election shall take place, or when the period of the teacher's employment shall begin.   Conceding that the requirement of the act of 1862 that a report shall be sent by the secretary of the board to the county superintendent "immediately after the annual appointment of teachers, giving their names and the date when ' the ensuing term ' of school will commence," etc. (carrying, as it does, the necessary inference that the teachers are to be elected before the " ensuing term " begins)—conceding that this is a directory rather than a mandatory provision, and that a later election of teachers and report thereof would not be illegal, nevertheless the question still remains whether a school board is empowered by the act of 1885 to elect a teacher (whether at the beginning or at any time within the school year), for a period of two or three successive terms to begin in a subsequent school year.   There is nothing in the act conferring this power, and, if the conclusion above expressed is correct, the general intent of the lawmakers as drawn from the entire body of our school legislation is that the board have no such authority.   If they have the power to choose a teacher for a period to begin in the next succeeding year, they might with equal propriety appoint for a period beginning in any subsequent year.   They would have the right, therefore, to employ a full corps of teachers (having the requisite qualifications) for successive periods of two or three terms, indefinitely, at any salary within reason that they saw fit to contract for, and thus bind the district and deprive their successors in office of the power to discharge the duties which the law imposes upon them.   This they had no power to do before

378    MURRAY, Appellant, *v.* SCHOOL DISTRICT.

Opinion of Court below—Opinion of the Court.    [33 Pa. Superior Ct.

the passage of the act of 1885 (Conley v. School Directors, 32 Pa. 194, 198), and it is not to be thought for a moment that by this enactment the legislature could have intended, without express words to that effect, to confer a power so directly at variance with the policy of the law on this subject.

We must, therefore, conclude that the Wilkes-Barre township school board of 1901–2 had no authority to bind the district by a contract to employ the plaintiff as a teacher for a period beginning in a subsequent school year, and that the plaintiff is not entitled to recover in this action.

The rule is accordingly made absolute, and judgment non obstante veredicto upon the whole record is directed to be entered for the defendant.

*Error assigned* was the judgment of the court.

*James L. Lenahan,* with him *William Walsh,* for appellant.

*James H. Shea,* with him *Richard B. Sheridan,* for appellee.

PER CURIAM, April 15, 1907 :

The judgment is affirmed upon the opinion of the learned judge of the court below.