## Kelly v. School District of the City of Bethlehem

*Everett Kent* and *Justin DiJirolanio*, for plaintiff.
*William G. Barthold*, for defendant.

MCCLUSKEY, P. J., January 20, 1941.—Statutory demurrer to statement of claim.

The statement of claim alleges facts as follows:

Simon A. Kelly, the plaintiff, and the School District of the City of Bethlehem on October 13, 1933, entered into a contract of employment, hiring Kelly as building superintendent of the school district for the term of four years from July 1, 1933, at the annual compensation of $2,500. By the terms of the contract, the school district retained the right to adjust the salary "compatible with the salary adjustment of other employes of the district", and in exercise of this right the salary was adjusted by the school district to $2,125 for the year 1933-1934. The parties covenanted and agreed that the contract "is subject to the provisions of the Act of Assembly of the Commonwealth of Pennsylvania, approved the 18th day of May, A. D. 1911, P. L. 309, with the amendments thereto and supplements thereof and to such rules and regulations as the board of school directors of the said district may impose from time to time, consistent with the said Act of Assembly". Plaintiff entered into the performance of his duties under

the contract and fully performed "each and every obligation resting upon him under the said agreement". On January 23, 1934, the school district by action of a majority of its board of directors notified plaintiff that the contract between him and the school district was canceled and at an end and that plaintiff was discharged. Kelly, the plaintiff, has been and now is ready and willing to perform his obligations under the contract. Defendant school district has refused to pay Kelly the salary which has become due since the middle of January, 1934. Plaintiff has alleged that the contract was entered into "after lawful corporate resolution", and the contract which was made a part of the statement of claim recites, "Whereas, by resolution of the board of directors of said district duly enacted at its regular meeting on October 13, 1933, the said employe was reappointed as building superintendent of the said district at the salary and for the term therein stated". Plaintiff has not alleged that the contract was either oral or written, but the written contract upon which suit has been brought was appended to and made a part of the statement of claim.

Defendant asserts that the statement of claim is insufficient: (1) Because it fails to aver that the appointment of plaintiff was made pursuant to a resolution enacted by the affirmative vote of a majority of all the members of the board of school directors duly recorded showing how each member voted; (2) because the contract purports to employ Kelly for a period of four years, and the school district cannot lawfully contract for the services of a building superintendent for a period exceeding a fiscal or school year. Defendant also contends that the statement of claim is insufficient at law because it fails to state whether the contract sued upon is written or oral, whether one or two contracts are being sued upon, and because double recovery is claimed for a portion of the contract period, and some of the damages asked are not within the purview of the

contract and are not recoverable for a breach thereof.

The technical objections which defendant has raised to plaintiff's statement of claim we do not think particularly significant. Plaintiff has appended the contract upon which he is suing to the statement of claim and has made it a part thereof. In making the merely formal objections, defendant has lost sight of this fact. It is true that plaintiff has not stated that the contract is written, and section 9 of the Practice Act of May 14, 1915, P. L. 483, 12 PS §391, requires that the plaintiff state whether the contract was oral or in writing. A formal objection to this oversight is properly raised by a motion to strike. It is also true that plaintiff has alleged that a prior contract was made between plaintiff and defendant. The prior contract, however, was performed by both parties until the contract upon which suit is brought was substituted therefor and the prior contract terminated. We think it clear from the statement of claim that plaintiff is suing upon the second contract which has been appended to the statement of claim, and defendant's objection that it is unable to ascertain whether plaintiff is suing upon two contracts or upon one contract is untenable. Nor are we impressed by defendant's contention that plaintiff is claiming a double recovery for the months of January to June, 1934, inclusive. In paragraph 18 of the statement of claim, plaintiff inadvertently substituted January 1, 1934, for July 1, 1934. The mistake is patent in its context and plaintiff has acknowledged the error on argument and in his brief. Nor is the objection that the damages which plaintiff has claimed are remote and speculative sufficient to sustain a demurrer to the statement of a good cause of action. If plaintiff's statement makes out a prima facie case, even though he may claim more damages than he will ultimately be entitled to recover, a statutory demurrer to the statement of claim will not be sustained: Scranton Axle & Spring Co v. Scranton Board of Trade, 271 Pa. 6, 9 (1921).

Defendant's objection that plaintiff has not sufficiently pleaded the facts of due authorization of the contract by affirmative vote of the majority of the board of directors carries somewhat more weight. The School Code of May 18, 1911, P. L. 309, provides that the affirmative vote of a majority of all the members of the board of school directors in every school district in this Commonwealth, duly recorded, showing how each member voted shall be required in order to take action on the following subjects: appointing other appointees, fixing salaries or compensation of other appointees of the board of school directors: School Code of May 18, 1911, P. L. 309, art. IV, sec. 403, 24 PS §334. In the statement of claim, plaintiff has alleged merely that "After lawful corporate resolution the said plaintiff and defendant entered into a new contract, a true and correct copy of which is attached hereto, forming a part hereof marked exhibit 'A' ". The contract appended recites, "Whereas, by resolution of the board of directors of said district duly enacted at its regular meeting on October 13, 1933, the said employe was reappointed as building superintendent of said district at the salary and for the term herein stated". If it is the school district's defense that the contract was not authorized by the proper action of the board of school directors, duly recorded, showing an affirmative vote of a majority of all the members and how each member voted, then defendant can deny the allegation in plaintiff's statement, and the burden of establishing by proof the proper action by the board of school directors rests upon plaintiff. While plaintiff has not pleaded the facts as fully as he might, we think he has pleaded them sufficiently to apprize defendant of his claim in respect to action of the board and to enable defendant to create an issue of fact by denying that the proper action had been taken: Carns v. Matthews, 114 Pa.

Superior Ct. 528 (1934); Potts v. Penn Township School District, 127 Pa. Superior Ct. 173, 190 (1937).

The important and controlling question of law which defendant has raised is, in our opinion, the question whether the board of directors was authorized to contract for the services of a building superintendent for a period exceeding the fiscal school year. The School Code of 1911, as amended, authorizes "each board of school directors" to appoint such other "employees as it may deem proper" and to define their duties and fix their salaries: School Code of May 18, 1911, P. L. 309, art. III, sec. 305, 24 PS §216. The School Code does not expressly prohibit the board of school directors from hiring other employes for a period longer than the fiscal school year. However, under the statutes in effect before the enactment of the School Code of 1911, the legislative intent was declared to limit the power of a school board to control the operations of the schools to such matters as relate either wholly or partially to the administration of school affairs during the particular school year. In Murray v. Wilkes-Barre Township School District, 33 Pa. Superior Ct. 373 (1907), the court laid down the general rule that an act of assembly should be construed in accordance with its general intent unless by express terms or necessary inference a different specific intent appears. Reviewing the statutes relating to the common school system, the court declared (p. 375):

". . . we find the school year adopted as a unit of duration. Three of those units make up the term of office of the school director. The people are to pass upon the personnel of the board and may by electing two new members change it for each school year. The board is to be organized anew at the beginning of each school year, as a distinct and separate administrative body from that of any preceding or succeeding year. Funds are to be provided by taxation annually. The state appropriation is distributable an-

nually. Reports are to be made annually—at the end of the school year, giving a history of past operations—and at its beginning (before the opening of the schools and immediately after 'the annual appointment of teachers'), giving the names of the teachers so chosen and designating the schools to which they have been respectively assigned, with a statement of the date of the beginning and the duration of the ensuing term. A minimum annual school 'term' is fixed by law. An annual meeting of directors with the tax collector is provided for. The act of 1854 (sec. 25) provided that 'immediately after the annual election of teachers' in each school year 'and before the opening of the schools for the ensuing term,' a joint meeting of directors and teachers should be held relative to the adoption of school books. So also, many other provisions of the law might be cited, all tending to show that in the legislative mind the school year was regarded as a fixed administrative period within which, as a general rule, the board of directors for that year should, and beyond which they should not, exercise a control over school affairs. While it is true that in certain cases a school board is authorized to enter into contracts not to be, fully performed during the school year in which the contract was made, yet these cases are exceptional, and we have beeen unable to discover in any of them any grant of power to a school board to bind the district and tie the hands of their successors in office by a contract relating to the running of the schools, the performance of which could not by its very nature be entered upon until after another school year had begun and another school board had organized and assumed the duties and responsibilities of their office."

We think that under the principle of construction adopted by the court in Murray v. Wilkes-Barre Township School District, supra, the same legislative intent appears in the School Code of 1911. While a school

board of the second class shall consist of nine directors, three of whom are elected biennially for terms of six years (School Code of May 18, 1911, P. L. 309, art. II, sec. 203, 24 PS §163), the legislature has provided that the school boards shall reorganize anew each year: School Code of May 18, 1911, P. L. 309, art. III, secs. 303, 304, as amended, 24 PS §§214, 215. A president, a vice-president, and a treasurer are elected annually by the board to serve for one year: School Code of May 18, 1911, P. L. 309, art. III, secs. 303, 304, as amended, 24 PS §§214, 215. Furthermore, contracts of employment for periods longer than the school year are specifically authorized in certain cases, for example, the secretary of the board, the district superintendent, and teachers of merit and experience: art. XI, sec. 1134; art. XII, sec. 1204. The Teachers' Tenure Act of April 6, 1937, P. L. 213, secs. 1 and 2, 24 PS §§1121, 1126, placed the employment of professional employes, that is, in general, those employes who were qualified as teachers, upon a permanent basis. The court has said that the Teachers' Tenure Act of 1937, amending the School Code of 1911, must be construed in relation to other provisions of that code to effectuate its purpose as a whole, and that the amendment should be strictly construed and made to conform to the general purpose unless the legislative intent is clearly and specifically otherwise: Walters v. Topper et al., 139 Pa. Superior Ct. 292. We think the implication clear that the legislature intended that the authority of the various school boards to employ other employes be limited to employment for a school year or a part thereof. Under the provisions of the Statutory Construction Act, the presumption is that the legislature intends to favor the public interest as against any private interest: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552, and it has been declared to the public interest that, unless the school board has been specifically authorized, some limit be recognized

upon its authority to contract and trench upon the powers of succeeding boards: Murray v. Wilkes-Barre Township School District, supra. In general, public officials elected for a limited term do not in the absence of express authority have the power to contract beyond the limit of their terms. It seems evident that a board of school directors would not be authorized to contract for the services of a building superintendent for ten years. It would be possible to hold that a board of school directors could contract for the services of other employes for the duration in office of the majority of the board voting in favor of the contract. Under such a holding, however, each contract of four years or longer would depend for its validity on the fact of continuation in office by a majority of the board, which would vary with each contract and would have to be established for each contract.

We believe, therefore, that the logical and practical interpretation of the School Code compels the conclusion that for those cases in which the legislature did not specifically grant authority to the school board to contract for services of other employes beyond the period of the school year the legislature did not intend the various school boards to have authority to do so. From this interpretation of the School Code it follows that the contract upon which plaintiff has brought suit was unauthorized. Since no valid contract existed between plaintiff and the school district at the time plaintiff was discharged, the employment of plaintiff was terminable at the will of the succeeding school board: Hawkins' Petition, 129 Pa. Superior Ct. 453 (1937); Walters v. Topper et al., supra.

And now, January 20, 1941, it is ordered, adjudged, and decreed that the statutory demurrer to plaintiff's statement of claim is sustained, and judgment thereon is entered against plaintiff, Simon A. Kelly, in favor of defendant, School District of the City of Bethlehem, Pa.